Case No. 25-1093, Corning Place, Ohio, LLC, et al. v. Commissioner of Internal Revenue. Argument not to exceed 15 minutes per side. Mr. Fanter, you may proceed for the appellant. Morning. Good morning, Your Honors. May it please the Court, Carl Fanter for appellants. I'd like to reserve three minutes for rebuttal. The tax court's form over substance denial was due to an administrative error of Corning's tax advisor. There's no dispute that the correct individuals received the correct deduction amounts against their income taxes for the correct year in the correct proportions. And TEFRA proceedings are designed to be a once-and-for-all decision on partnership items to avoid duplicative contests. The tax court also applied the wrong valuation standard to the easement deduction. It viewed the fair market valuation as-is based on the current use. But the regulation requires the easement's value to take into account an objective assessment, Your Honors, of how the property would be developed absent the restriction, and the court didn't do that. Can I ask you something? Let's say this is for the sake of argument that the tax court's affirmed. I realize the whole point here is for that not to happen. Just help me through a part of this that I don't quite understand. So if everything is affirmed, that means we'll call it investment, this other entity. Now it's hit with these penalties, and they've got to deal with it. Do they in that proceeding, in that proceeding, can they raise defenses along the lines of, hey, listen, we should not be stuck with this. We really did file a return, and you managed to show you did. And then at that point, you say we were trying to file in alternative ways. That's what we were trying to do. We weren't sure how this worked, so we essentially had this other filing. It's the investment filing, and therefore it might be the $22 million is a little high. We'll circle back to that. But essentially, wouldn't investment be able to – is it not possible that this decision eventually won't really affect them if they managed to show that they did file a return and then show that, well, you shouldn't be hitting us with these penalties for this, that, and the other reason? What would happen at that proceeding? Well, that's right, Your Honor, because the tax court held that it didn't have jurisdiction to deal with investments in the 2016 returns, and then the taxpayers that invested in corning investment. So there are no statute of limitations issues. Investment just gets to raise its defenses then. Is that what happens? Well, I think by this time, Your Honor, and again, I'm not sure this is in the record, but I believe that the statute of limitations period would have run for the IRS to bring an FPA against corning investments. Don't use acronyms, at least with me. That's going to get you nowhere. If you use acronyms, I assume you don't want me to understand, and that will be – my assumption will be if I understand, I won't agree with you. So anytime you use an acronym, that's what it means to me. I apologize for the acronyms, Your Honors. I believe the time period the statute of limitations will have run for the Internal Revenue Service to have challenged corning investments if it wouldn't have deemed to have considered to have challenged it here in this TEFRA, Tax Equity Fiscal Responsibility Act proceeding. And the reason we raise that argument, Your Honor, and the reason you're asking about it is because we believe that the whole point of the Tax Equity Fairness Responsibility Act proceedings is so all these partnerships and the taxpayers can have everything adjudicated at the same time. But yes, to answer your question directly, we believe the upshot would be – The statute of limitations, though, don't get in the way of defenses. They do not, Your Honor. So a lot of these arguments you potentially have another shot at or investments lawyers and accountants have another shot at. That's certainly our position, Your Honor, and I believe that's the holding of the tax court's decision that it didn't have jurisdiction. I'm not sure if the IRS takes that view, but that's exactly right, Your Honor. Corning Investments filed its amended return, and all the taxpayers had their deductions allocated in the appropriate percentages. That's exactly right. So with respect to the valuation standard, Your Honor, the parties agree that comparable sales don't exist, and that's typical for conservation easements. So I also believe the parties agree that the before and after method is used to determine the easement's value. But here the tax court wrongly valued the property as is, meaning essentially a vacant shell for the before value. That's a little unfair. They had a $6 million price paid for it, and everyone thought that was fair, arm's length and so forth, and it frankly was a shell. So that's not a pejorative. That's accurate. So why isn't the $6 million a pretty good starting place? The $6 million, Your Honor, is not the starting place because under the Treasury Regulations 14.H.3.2, that regulation instructs the valuation folks, the appraiser, or in this case the tax court when it's reviewing things, to look at potentially objectively assess potential uses of the building before and after the property, before and after. And that makes sense because for a conservation easement, that's what's being given up in perpetuity. What's being given up in perpetuity is the opportunity to develop that. It's what a willing seller. 33 floors of airspace. In this case, it was 33 floors of airspace, Your Honor. But what I'm talking about here, though, is just – I have not done that with my house, but this case made me wonder, can I avoid paying taxes for the next 10 years? Well, I think in that case, and I'm not aware of your house, Your Honor, I think the issue would be – the limiting principle would be, is it objectively – is there an objective assessment? Is it objectively reasonable? Objectively reasonable. Yes. Very good word on this case. I mean, that seems like a big stretch to me. Your Honor, what were you going to do with the historic things? You'd already gotten that tax benefit. That's right. How could you possibly get the historic benefit and then change the – triple the size of the building? That just seems really hard to get around. Well, taxpayers, Your Honor, are allowed to use multiple tax incentives to order their behavior and order their development. Wouldn't the incentive have to have some actual basis in reality of what one could do with the property? Absolutely. Absolutely, Your Honor. So how could you have done this, built those additional 33, 34 stories, whatever, in light of the fact that you had already gotten the historical tax benefits and state tax benefits by promising never to do that? Well, and the last part, Your Honor, is not the case. So for the tax credit incentive program that you're referring to that the developer did utilize, they're only required to not develop that property for five years, to maintain the historic preservation for five years. The easement, which is a separate – But I'm sorry about the – I understand what you're saying here. But part of what the promise was, was – so you're saying that it will – whatever we do five years from now, it doesn't matter that it's going to be seen from the street. That's right, Your Honor. In other words, for the first tax credit incentive that Judge Sutton and you asked me about, those tax credits, the exchange for that, so to speak, is that that preservation has to be maintained for a five-year period. The easement deduction is for perpetuity, Your Honor, which is a separate regime, which is why taxpayers are allowed to utilize both of those. But wasn't the – wasn't your evaluation assuming that the whole project – there would be no delays and the whole project would be completed in some lightning-fast time frame, like eight months is what I recall? So how does that square with the five-year wait? The five-year wait is for the preservation easements, the – for the taxes. If you tell us the clock, they either overlap or they don't. When did the historic easement start and when did the five-year clock end? You are correct that the preservation easement plans, like, were assumed to start within that five-year period. Okay, so what's the answer to Judge Larson's question then? So the answer is that they're both appropriately taken, but even then, even if, for example, that five-year period for the preservation for the tax incentive credit payments, Your Honor, impacted, that would still be just impacting a dollar value reduced to time zero. So even if it would be less than the $22 million, the judge here didn't engage in that process at all. The judge didn't engage in weighing that. The judge just – You would lose the state and whatever state tax credits you got because you didn't – you started building before your five-year clock was up, so you'd lose some of that incentive, but it wouldn't – that's just the price of doing business and it was more valuable to you to build 34 stories, so you would have done it and you should have subtracted something out. That's right, Your Honor, and more fundamentally, the tax – Why is that the IRS's job? I mean, this is such an obvious point. It seems incredibly aggressive at so many levels, I just have to say. But it's just amazing to me you're not coming here and saying we made a mistake. We really made a mistake when we had an overlap between the historic and conservation easements. That just astonishes me. Your answer is, yeah, well, that's fine. They could have adjusted it by a couple million here, a couple million there. That was a little aggressive. I'm just kind of blown away by that. Well, Your Honor, first, there is no law suggesting that both of those things couldn't be taken. But more fundamentally, Your Honor, the reason – Why isn't there? If it's five years, why are you allowed to do another one that is incompatible with the five-year one during the five years? I don't understand that. Well, because at the time the easement was taken, even the tax credit program hadn't been approved and done yet. So you're kind of just throwing all these deduction options in the air? We never thought it possible we'd get both at the same time? Well, Your Honor, again, leaving aside that – You're the ones trying to get both at the same time. That's right, Your Honor. Okay, so – That's right, Your Honor. And again, the tax court here didn't even engage in the analysis of what the development costs, what the before value and what the after value would – I mean, there might have been some sticker shock with the $22 million. Well, there may have been sticker shock, Your Honor, but the tax court is required to follow the regulation. And the regulation here specifically says to consider the before and after value, including an objective assessment. And the court, right from the jump, declined to do that because it said the most powerful evidence that you have is what the developer actually did. And that's not the case for a conservation easement deduction. By definition, there would be no conservation tax easement deduction. So what we're asking for, Your Honor, is just a remand for the tax court to apply the appropriate analysis and to join these issues. And I'm out of time. Well, we see the clock, too, and we're very good at noticing it. But I just want to make sure we don't have any other questions. I mean, I still don't quite understand your valuation argument just for what it's worth. So for my purposes, I wouldn't mind your explaining, you know, maybe $6 million isn't the starting point. But surely $6 million is relevant to what a reasonable use of this building is. I think we agreed on the word reasonable. So I'm still not sure I understand what their flaw, what regulation you're saying the IRS actually botched in terms of interpreting. I still don't quite get that. The regulation that the tax court erred in not applying is 14H3R2 that requires the tax court to engage in an objective assessment of what could potentially be built absent the restriction, the before and after. How does it enter into this, the concerns that the tax court expressed about the evidence that was presented about what could have been built in those 33 stories and how it would have been supported? I mean, the tax court was very skeptical about the kind of evidence that you presented with regard to that, which seems like it would enter into a reasonableness evaluation here, wouldn't it? You're right. The tax court was skeptical. The tax court was skeptical from the beginning to the end, Your Honor, and that's because the tax court rejected the application of this regulation, which, again, Your Honors, means something. They have to apply it. It's not just traditional fair market. But what word did they not respect in the regulation? I still don't understand your point. What they did not do is apply under 14H3R2 a highest and best use analysis. It's highest and best reasonable use. It's not like, oh, if we make this thing 600 stories, geese won't fly into it and we'll save geese and we're going to do this amazing easement giving away this airspace to the moon. You don't just go highest and best use literally and say, well, whatever you put together, that's great and you guys won't pay taxes for 20 years. That's not how it works. It's not even close to how it works. Understood, Your Honor, but the court didn't engage in that analysis and it just said, look, here's a shell building, $6 million is the guidepost. Can I ask this question? You came in and you said, we think it's worth $22 million because we're going to build 34 stories and it's going to be approved immediately and there's going to be no construction delays, which, of course, never happens. And this is our proposal, $22 million, that's the highest and best use. So you came in with your pitch about this is how we're going to meet the statute. The government came in. They said it's $6 million. It's what the fair market value was. Is it your position that it was the tax court's job to mediate between those two? Or is the tax court allowed to pick? They said you said $22 million. They said $6 million. Yours seems unreasonable. That seems more reasonable. I'm going to pick that. It sounds to me like you want the tax court to be a mediator and say, no, it's probably like $12. But you came in with $22. Why aren't they just allowed to reject that? That's my question. The tax court on a remand would be allowed to reject the proposed highest and best use that we're doing if it applied the regulation because, again, the tax court here valued the air rights, Your Honor. The air rights are not what's to be valued. The tax court from the beginning just thought the $6 million fair market, traditional fair market value analysis is what applied. I agree that the tax court is permitted to elect and select and provide its judgment. But it didn't do that. It didn't provide the correct standard. It just said essentially here's the fair market value. There was an arm's length transaction of $6 million about 16 months beforehand. So that's what governs things. I'm not going to analyze that. And that's what we believe is inappropriate, Your Honor. And so we're asking for that analysis. Forgive me. I must have misremembered this. But I thought, did not the IRS put on an expert? And I actually thought they said it was more than $6 million. Am I misremembering like $900,000 or something? I don't know why I have that figure running around in my head. But didn't they actually put someone on and say, well, here's the most we think you could fairly treat this as? Am I right? Yes, Your Honor. They did put on an expert. So they did do what you're asking. They didn't like it. They did not, Your Honor, because that appraiser and the tax court didn't analyze the potential highest and best use under H-3-2, which is the potential objectively assessed uses of that. The appraiser and the tax court didn't engage in that analysis. To your point, that appraiser took the shell bill. I have an idea. You're building so much suspense over this regulation. Why don't we hear from the IRS lawyer about that exact regulation? You'll get your full rebuttal time and maybe more, and we'll go from there. How's that? Thank you, Your Honor. Thank you. Mr. Jones, you can start where you want, but we're definitely all ears on this regulation point. Good morning, Your Honors. May it please the Court, Sam Jones on behalf of the Commissioner, and I'll pick up on that point about the meaning of this, what we refer to as the objective assessment regulation that Corning has sort of harped on throughout this proceeding. I think, as we explained in our brief, it simply requires courts and parties to objectively assess the likelihood of possible development absent an easement. That is indistinguishable from the sort of standard highest and best use test that courts like Escort Corporation and the Tenth Circuit, Tott Property Holdings, and the Eleventh Circuit have held, that this regulation simply requires inquiry into a building's highest and best use, and the tax court did objectively assess the likelihood of potential uses of the Garfield building. It just found that it was totally unlikely that Corning's proposed use, this 34-story addition that had no market support in the downtown Cleveland area, that was not physically possible, that was not financially feasible based upon the evidence that Corning provided, the court found that none of those elements that are a part of the objective assessment regulation, the highest and best use tests, were satisfied. So I think the court did a comprehensive analysis of the objectively possible uses, found that Corning's planned use of rehabilitating and converting the existing vacant commercial frame of the Garfield building into residential apartments was its highest and best use. That was reflected in the actual sale price, the $6 million sale price, between two arm's length entities, sophisticated players in the real estate market, and similarly supported by comparable sales of like-kind buildings, of which there were many in Cleveland, that vacant commercial shells, none of them were being vertically expanded as Corning had proposed. All of them were being purchased, many in historic districts, with pending or approved applications for state and federal historic tax credits to finance. One thing that's quite puzzling to me, it just seems like an oxymoron, an historic tax credit that's only five years. Is that how that works? That just seems crazy to me. I would have thought the whole point was to preserve it for a very long period of time. Right, I'm not sure on the rationale of the time limit. I do know that applies to the federal tax credits. Those are awarded after a developer completes the renovation and then applies as sort of a recapture of the tax credits within that five-year period. You do this really cool thing that preserves the facade of this amazing landmark building in Cleveland, and then at the end of five years, you tear it down and turn it into just a condo. Right. That's allowed? That just seems bizarre to me. I think technically after the conclusion of that five-year recapture period, that would be allowed under the recapture provision of the federal tax credits. But I think your point is a correct one that is entirely unlikely and inconsistent with Corning's representations to federal and state authorities about what they were going to do. I think I'd also emphasize that it's undisputed that Corning would have forfeited, would never have received these tax credits if it embarked on this 34-story addition that they said they could have completed in eight months. So they wouldn't have received these federal and historic tax credits in the first place if they embarked on this particular proposed renovation, and they said in those applications without those credits, it would not be economically feasible for them to do the existing 11-story rehabilitation to say nothing of, in addition to that, adding another 34 stories on top of that. So Corning as itself had basically admitted that it would not be financially feasible for it to do this 34-story addition. That's one of the requirements of finding a different use to be a highest and best use. Maybe I'm not understanding Corning Place's argument, but it sounds to me like they came in with a pitch. We're going to build 34 stories. Very ambitious. You said they're not going to be able to do that, and your opponent seems to say, well, it was the tax court's job to figure out what the actual highest and best use was, which maybe they could have added two stories to the building, and the foundation would have supported it and the timeline, and they would have gotten a little more. Is that the way litigation works in the tax court? Because normally we think, you know, you want a deduction. You come in and you prove your case. I'm building 34 stories, and then the tax court just says yes or no. They don't have to mediate in the middle. That seems like something you could mediate about. But maybe I'm wrong because I've never been a tax court litigator. Your Honor, there's no requirement that the tax court sort of come up with this amalgamated highest and best use between the two parties. Taxpayers for charitable contributions, like all deductions, bear the burden of proving that deduction. The tax court is able to scrutinize that evidence, reject that evidence in proposed use, and adopt the one proposed by the commissioner and also the one reflected by the evidence. In answering Judge Larson's question, do they even have to pay attention to the IRS one? I mean, are they allowed to just say you went for it with the $22 million? That's not possible. Even if there's evidence that $15 million would have been fine, the tax court would still be affirmed because they were able to show that $22 million was just too high. And that's that. Right. Corning didn't carry its burden of proving that it was entitled to this $22 million easement restriction on the use of its property. Ultimately, the court did make a highest and best use determination. It just was not the use that Corning proposed. It was the actual planned use of the building, the rehabilitation and conversion of it into these apartment units. And Corning brings in this discussion between as-is and as-complete valuation. I think that just misconstrues the highest and best use inquiry and the Treasury regulations. The Treasury regulations require parties to value the contribution on the date it is made, that value the Garfield Building on the date of the contribution in its form on that date. The highest and best use inquiry is not itself a measure of market value. It's a concept that focuses on the demand for a use and how that affects the market price of that building on the date of the contribution. Here we have, as I think the Fifth Circuit said in White House Hotel, it asks what use a hypothetical buyer will consider in purchasing the property. It's an aspect of the overall fair market value analysis that the court does. What a willing buyer would pay, what a willing seller would accept, both with knowledge of the facts. Sorry, go ahead. I was just going to say, so the date of the contribution, going back to a question that Judge Sutton asked earlier, so based on the way this whole thing has gone, the date of the contribution, it seems like it would fall within that five-year timeframe that counsel is talking about that is the duration of the state and historic tax credits. Is that right? Correct. And part of the highest and best use is that there must be, if it's different than the current use, there must be closeness in time of this different use to be completed if it is to be a change between the current use and the proposed use. So Corning had to show that it could have completed this 34-story addition relatively quickly in time from the date. To claim it in 2016. To claim it in 2016. And they were restricted by these tax credit applications for that five-year period. They couldn't even start on it for those five years. Maybe I'm wrong, but I thought I read it was on the National Register of Historic Places. Correct. That imposes its own restrictions on building, doesn't it? I don't think that's in the record, Your Honor, but I think that could be correct as well. Can I shift a little bit to the thing that I struggled with a little in reading the briefs, just the whole timing thing. I was almost puzzled why the tax court went down the road of, well, they had this window and here's when the deal was, and that was not within the window, where they were a partnership that would qualify as opposed to one controlled by one partner. And I'm still struggling a little bit. I understand there's a debate whether investment actually filed a return, but for the sake of my questions, let's just imagine they really did file a return. I am struggling a little with why we have to deal with that. It would have seemed to me it's just a function of whether 22 million works, and if it doesn't, it doesn't work for either of them. And if it does work, it works for investments eventually going to be able to get that benefit. Well, assuming they filed a return. And I was trying to just figure, it did seem harmless a little bit. I was struggling a little bit with why we're worried about that. Well, I guess a couple of points to that, Your Honor. I think if I could take a step back. Corning Place, Ohio, the source partnership, claimed this charitable contribution on its 2016 return. As it admits, it was the wrong entity to claim that. It claimed it on the wrong return. It was not made within the taxable year for which it was claimed under Section 170. The IRS, but in any event, they claimed it on that return. The IRS examined that return as it's required to do under IRC 6221 as then in effect. It has to treat, examine partnership items at the source partnership. Here that was Corning, and it issued an administrative notice following that examination, adjusting Corning's partnership item, the charitable contribution, to zero. And Corning challenged that administrative notice in the tax court. The tax court was limited in its jurisdiction. That administrative notice was its jurisdictional basis, and it was limited to reviewing that. Investment as Corning's partner is bound by Corning's reporting of that charitable contribution. It's bound by- I thought individual partners could bring defenses. So in other words, the returns gets assessed, resolved. We now have that. Assume for the sake of argument, the tax court opinion is affirmed. My understanding was that the partners, now they have this liability on them. One of the penalties, they don't get the deduction. But I thought they could raise defenses perhaps to the penalties at that point. Is that right? If there are certain partner-level defenses that they have, but the charitable contribution, the denial or acceptance of the charitable contribution at the source partnership level Corning will filter down to all the investment's partner. They have no right to reassess whether it should be zero. Exactly. But they do have a right to object to the penalties. That's correct. If there are partner-level defenses to the imposition of penalties with respect to the valuation of that contribution- Let's say they had filed a return. Wouldn't one pretty good argument be give me a break? We did. We both filed, and one of them has to be right. So ours was filed at the-the investment one was filed at the right time. So at a minimum, we shouldn't be penalized for filing at the wrong time. I'm not asking you to say that's right, but that argument would be allowable then, wouldn't it? Had they filed. Assuming they had filed, Your Honor, I think they could. And I do want to distinguish there's two types of penalties here. There's the gross valuation misstatement penalty for the easement. That has no sort of reasonable cause partner-level defenses available. For the negligence penalties applied for the misreporting it on the wrong return. Partner-level defenses like, you know, like you're referring to could be-I believe could be invoked by investment as a partner of Corning. Saying that we filed this, you know, we screwed up, but, you know, we tried to rectify it. But I'll just note that the time period for which Corning to investment to adjust-to try to adjust on its own, Corning's filing expired when the IRS issued that administrative notice to Corning reducing the charitable contribution to $0. So, you know, they said-again, the tax court found that there was insufficient evidence for them to prove that they filed this return. But the date that they say they filed in September 2020 was, you know, two or three months after the statute of limitations for doing so expired. So whether or not they filed it I think is beside the point. So I know this taxpayer. They live in a residential area. Let's say for the sake of argument it's a half-acre plot. Let's say it's a 3,000-square-foot house. Could they get a plan to make it a 4,000-square-foot house, decide not to do the 4,000-square-foot house, and create an easement for the 1,000 and then deduct from their taxes the value of that easement? I don't want to speculate on particular circumstances, but I think if they could show that that 1,000-acre addition- They're not going to do. But they show that it was reasonably probable. I mean, I think this sort of- What if you live in a pre-Civil War farmhouse? Another hypothetical taxpayer. Right. I mean, I will note that these sort of conservation easements have been abused. I mean, there's a Senate report in 2017 that there's basically where people are just buying tax deductions, and I think with no intention of pursuing these elaborate developments like the one that Corning proposed here. I see that my time has expired. Your Honors, if there's no further questions, we ask that this Court- I do have- Yeah, sure. You just kind of hit on something that has been bugging me. You have said that the IRS has to look at this in terms of the likelihood that what would result in the deduction would actually- Would result in the deduction. So to what extent does the intent of the taxpayer actually enter into this? I mean, because as you read through this case, and having lived near Cleveland for a really long time, and being familiar with, for example, the Garfield Building, it's hard to imagine an intent to build 34 or three stories on top of that building, even if the state and historical deduction or credits weren't there. So to what extent does that need to enter into it, if at all? The taxpayer's sort of subjective motivations? I mean, I think the taxpayer's subjective intent is, generally speaking, irrelevant to assessing whether that is likely, objectively probable, but the Court doesn't have to blind itself to undisputed facts. I mean, I think here, prior to the granting of the easement, Corning was well down the road over a year of planning to do this planned conversion of the existing frame, had been preliminarily approved for the tax credits to do that rehabilitation, had already embarked to a small extent on the actual conversion. So I think the Court is well within its discretion to consider those undisputed facts, but I think generally sort of the subjective motivations of the taxpayer are not relevant.  Thank you, Your Honors. We'll hear rebuttal. Your Honors, I'd just like to pick up on a line of questioning that Judge Larson and Judge Sutton were asking me before I sat down, which is the tax court process and what happens here, basically. And there are two separate issues that the tax court needs to deal with. One is just whether there was a deduction, number one, and that's the tougher proceeding issue we've been talking about. The second issue is devaluation, and the Court does need to determine the valuation. One, if there was a deduction, then, for example, the Court held, I think it was $900,000. If the deduction was held to be valid, then even though we had submitted or rather the taxpayers ultimately took their share of the $22.5 million, they would receive the $900,000 that the taxpayer got. In the event that the deduction was denied, in which case that's what the tax court did and that's what we're appealing, that would matter, as IRS's counsel said, for purposes of penalties. In other words, that delta from the valuation that the tax court arrives at informs the penalty, the potential penalty amount. So it's not quite as binary necessarily as you were asking. It really is the tax court does need to come at a valuation, which is why I think it's important for the tax court on remand to engage in that analysis. It's typical for tax courts to do that. We cited a number of cases talking about that, Kiva, Dunes, Champions, Dorsey, Schmidt. These cases engage in this before and after test. And here, the tax court just engaged in looking at the vacant shell building without really engaging in that process. And I think that's what we're entitled to, Your Honors, with respect to a remand order. You had asked about the specific statute also, Your Honor, about the regulation, I should say, Your Honor. The tax court and the IRS below didn't engage with that statute. On appeal, the IRS has said, look, this reg H3 Romanet 2, all that basically does is restate highest and best use, which has been a component of fair market value for over a century in the case law. Well, if that's the case, they're essentially arguing that that reg, that IRS regulation means nothing. And we submit that that's not the case, and we think that the trial court needs to engage with that regulation and do that. Moreover, it's also specific to conservation preservation easements, which is different than just the general fair market valuation for other charitable deductions, which, again, is another reason why we would like the tax court to engage with that, Your Honor. And I'm out of time, but I'm happy to answer any questions. No, I think we're good. Thank you very much. Thank you, Your Honors. Thank you, Mr. Fanter, and thank you, Mr. Jones, for your helpful briefs and arguments. We really appreciate it.  The case will be submitted.